IN RE CONSERVATORSHIP OF JOHN J. HOLLE,
A PROTECTED PERSON.
CENTRAL FINANCIAL CONTROL, INTERESTED PARTY, APPELLANT,
V. PATRICIA M. KOSISKE, CONSERVATOR, APPELLEE.

576 N.W. 2d 473

Filed April 3, 1998.    No. S-96-1038.

David W. Watermeier and Joseph E. Dalton, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellant.

Michael J. Lehan, of Kelley, Lehan & Hall, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

McCORMACK, J.
This action arises from the order of the county court for Sarpy County, Nebraska, for distribution of proceeds to credi-

tors, including medical providers, from funds held in conservatorship for the benefit of John J. Holle, who was left incapacitated as a result of a gunshot wound to the head. The proceeds were from a settlement reached with the homeowner's insurance carrier of the parents of the young man who shot Holle. Central Financial Control, on behalf of St. Joseph Hospital, appealed to the Nebraska Court of Appeals the share of the proceeds ordered to be distributed to it based upon its hospital lien against Holle. On our own motion, we removed the matter to this court under our authority to regulate the caseloads of the Court of Appeals and this court. We reverse the order for distribution of September 10, 1996, distributing proceeds to creditors, including medical providers, and remand the cause for further proceedings.

## FACTUAL BACKGROUND

On September 17, 1994, Holle suffered a gunshot wound to his head which left him permanently disabled. As a result of this gunshot wound, several health care providers furnished care to Holle. Appellee, Patricia M. Kosiske, Holle's mother, was appointed special conservator. Appellee filed suit against the parents of the shooter, Steven and Angelita Salazar. Appellee, as conservator, approved a settlement with the Salazars which paid Holle the limit of the Salazars' homeowner's insurance policy.

Appellee filed a "Motion for Hearing on Distribution of Settlement Proceeds" which requested the court to determine (1) the most appropriate vehicle for management of the settlement proceeds; (2) the distribution of proceeds to creditors, including medical providers; and (3) the approval of an application for the approval of attorney fees and costs. On September 10, 1996, the court ruled on the request for determination of distribution of proceeds to creditors and medical providers and directed checks be delivered by the clerk of the court to all medical providers in the sum of 50 percent of their claims. This order directed that a check be distributed to appellant for St. Joseph Hospital in the sum of $22,956. Also on September 10, a separate order was entered approving attorney fees. Appellant filed an appeal of the September 10 order, and no order was ever entered regarding issue No. 1 of the appellee's motion, which

issue requested the determination of the most appropriate vehicle for management of the settlement proceeds.

## ASSIGNMENTS OF ERROR

Appellant alleges that the county court erred (1) in entering its order for distribution without determining whether the creditors received notice of the distribution hearing and (2) in determining the amount of money the medical providers, including appellant, were to recover for medical services provided.

## STANDARD OF REVIEW

It is not only within the power, but it is the duty, of an appellate court to determine whether it has jurisdiction over the matter before it. *Trew v. Trew*, 252 Neb. 555, 567 N.W.2d 284 (1997); *State ex rel. Fick v. Miller*, 252 Neb. 164, 560 N.W.2d 793 (1997); *City of Lincoln v. Twin Platte NRD*, 250 Neb. 452, 551 N.W.2d 6 (1996). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. Conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *State ex rel. Fick v. Miller, supra; Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997); *State ex rel. Keener v. Graff*, 251 Neb. 571, 558 N.W.2d 538 (1997).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Fales v. Books*, 253 Neb. 491, 570 N.W.2d 841 (1997); *Continental Western Ins. Co. v. Swartzendruber*, 253 Neb. 365, 570 N.W.2d 708 (1997); *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997).

## ANALYSIS

### JURISDICTION

The order of September 10 was a final order as to appellant on behalf of St. Joseph Hospital. The order specified the amount awarded and directed that the amount be forwarded by the clerk of the court to appellant from the funds of the conservatorship. See, e.g., *State ex rel. Fick v. Miller, supra*.

### NOTICE

Appellant alleges as its first assigned error that it did not receive proper statutory notice of the hearing regarding the

order for distribution. There is no doubt but that appellant is an interested party in the proceedings as the holder of a lien in the amount of $45,536.91. See Neb. Rev. Stat. § 30-2209(21) (Reissue 1995). As appellant points out, Neb. Rev. Stat. § 30-2220(a)(1) (Reissue 1995) clearly states that in a statutory proceeding, the notice required to be given to all interested parties is 14 days. The record is clear, and appellee does not dispute, that notice was not sent to the interested parties regarding the hearing on the order for distribution within the 14-day period. Appellee's affidavit of mailing notice was filed September 4, 1996, and states that a copy of the notice was sent to all interested parties on August 30. As the hearing date was September 10, appellee's notice was clearly infirm, and we must reverse, and remand for further proceedings.

## NEBRASKA'S HOSPITAL LIEN STATUTE

Although this cause merits reversal on notice grounds, appellant's final assignment of error merits consideration as well. Appellant claims that under Neb. Rev. Stat. § 52-401 (Cum. Supp. 1996), its hospital lien attached on July 1, 1996, when the settlement with the Salazars was approved, because until that time, no fund existed to which the lien could attach. Appellant further points out that the revisions to § 52-401 became effective on September 9, 1995, almost a year prior to this settlement date. Currently, § 52-401 reads in part:

A physician, nurse, or hospital claiming a lien under this section shall not be liable for attorney's fees and costs incurred by the injured person in securing the judgment, settlement, or compromise, but the lien of the injured person's attorney shall have precedence over the lien created by this section.

Appellee argues that because the effective date of the revised § 52-401 is September 9, 1995, it is inapplicable to the case at bar because the events giving rise to appellant's lien, namely the providing of services, occurred in 1994. The plain language of § 52-401 states:

Whenever any person employs a physician, nurse, or hospital to perform professional service or services of any nature, in the treatment of or in connection with an injury,

> and such injured person claims damages from the party causing the injury, such physician, nurse, or hospital, as the case may be, shall have a lien . . . on the amount due for the usual and customary charges of such physician, nurse, or hospital applicable at the times services are performed . . . .

What is apparent from a plain reading of the statute is that the lien of the hospital attaches at the time the services are performed. At the outset, the *amount* of the lien is fixed based upon the normal compensation for the lienholder *at the time of the provision of services*. In addition to this clear reading of the statutory language, our case law regarding § 52-401's predecessor is clear that a hospital lien attaches upon a patient's admission for treatment. See, *Ehlers v. Perry*, 242 Neb. 208, 494 N.W.2d 325 (1993); *West Neb. Gen. Hosp. v. Farmers Ins. Exch.*, 239 Neb. 281, 475 N.W.2d 901 (1991). Thus, appellant's lien clearly attached during 1994, and subsequent changes to § 52-401 are inapplicable.

Neither party has raised the constitutionality of § 52-401, and we therefore will not consider that issue.

## CONCLUSION

The notice given to appellant of the hearing regarding disbursement of proceeds was infirm, and we must reverse the order and remand the cause for further proceedings. However, it is clear that the lien anticipated by § 52-401 attaches at the time services are rendered, rather than at settlement by the injured party. Thus, the revised version of § 52-401 is inapplicable in this case.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.