IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

SMITH V. SARPY COUNTY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHIRLEY A. SMITH AND STEPHEN L. SMITH, APPELLEES,

V.

SARPY COUNTY, SARPY COUNTY DEPARTMENT OF PLANNING AND ZONING, BRUCE FOUNTAIN,
PLANNING AND BUILDING DIRECTOR, AND DONNA LYNAM, SARPY COUNTY ZONING
ADMINISTRATOR AND CODE ENFORCER, APPELLANTS.

Filed January 10, 2017.    No. A-15-862.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed.

L. Kenneth Polikov, Sarpy County Attorney, Michael A. Smith, Nicole L. Spitzenberger, and Sarah G. Gyhra, Senior Certified Law Student, for appellants.

Stephen L. Smith for appellees.

INBODY and PIRTLE, Judges, and MCCORMACK, Retired Justice.

MCCORMACK, Retired Justice.

INTRODUCTION

Sarpy County, Sarpy County Department of Planning and Zoning, Bruce Fountain, and Donna Lynam (collectively the county) appeal from an order of the district court granting summary judgment to Shirley A. Smith and Stephen L. Smith on their complaint for injunctive relief. The district court found that no genuine issues of material fact existed with respect to the Smiths' claim that they detrimentally relied on representations of the county in undertaking a building project. Upon our review, we find no error in the district court's grant of summary judgment to the Smiths, and we affirm.

BACKGROUND

The Smiths own a structure in Sarpy County which was partially destroyed by a fire in 2009. The Smiths applied for a building permit and a floodplain development permit in order to repair the damage to the structure and add on a second story. The Smiths were granted the floodplain development permit on July 12, 2011.

With respect to the building permit, Lynam, the Zoning Administrator/Inspector, stated in an affidavit that the county normally requires applicants to submit building plans along with their applications for building permits. According to Lynam, the county approves the building plans before issuing the building permit. Lynam admits that an application was received from the Smiths and a building permit was granted to them on August 10, 2012. However, according to Lynam, when she took over as Zoning Administrator/Inspector on August 13, 2012, the Smiths' building permit application did not include a copy of the building plans. According to Lynam, an office employee did not know whether the documents were "not submitted or [whether they] were missing from the file." The Smiths claimed that they had provided numerous copies of the building plans to Sarpy County officials. A letter from Deputy County Administrator Scott Bovick in June 20, 2011, references "the plans [you] provided in April 2011."

Following the issuance of the floodplain development and building permits, the Smiths began construction. Lynam inspected the property on August 28, 2012. According to Lynam's affidavit, she believed the footprint of the new construction exceeded the allowable setback for the property. She discussed the issue with Stephen, including receiving a new copy of the building plans from him. Stephen stated in his affidavit that the building project, including the location of two columns outside the footprint of the original foundation, were included in the building plans which had been discussed with and approved by county officials. Stephen further stated that in the summer of 2013, two Sarpy County officials, George Reese, the Sarpy County Building Inspector, and Shane Baker, the Sarpy County Inspector, inspected the foundation of the project and gave their approval for the project to proceed. Reese and Baker's inspection included the foundation for the column footings located outside the footprint of the original foundation.

On October 15, 2013, approximately 14 months after the Smiths began construction, the county issued a stop order indicating that the reconstruction project failed to meet county building requirements. The county claimed that the Smiths' building project violated the setback requirements for the property. The county also claimed that the Smiths' structure violated the floodplain development permit because the basement level was taller than 4 feet, the cost exceeded the $30,000 estimate provided on the application, and the expansive outward addition exceeded the scope allowed by the permit.

The Smiths filed suit, claiming, inter alia, that they had relied on the representations of county officials that their building project was permissible and that they had expended time, money, and effort in reliance on such representations. Additional claims raised by the Smiths were dismissed and are not at issue on this appeal. Following a hearing, the Smiths were eventually granted summary judgment on their claim for detrimental reliance. The district court ordered that the county lift its stop order and allow the Smiths to complete construction pursuant to the approved plans and subject to all necessary inspections.

The county appeals. Additional facts will be discussed, as necessary, in the analysis section below.

## ASSIGNMENTS OF ERROR

Consolidated and restated, the county argues that the district court erred in granting summary judgment because there are genuine issues of fact regarding whether the Smiths built in good faith reliance on the building and floodplain development permits.

## STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015). If a genuine issue of fact exists, summary judgment may not properly be entered. *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 856 N.W.2d 731 (2014).

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives the party the benefit of all reasonable inferences deducible from the evidence. *Kercher v. Board of Regents*, 290 Neb. 428, 860 N.W.2d 398 (2015).

## ANALYSIS

### APPLICABLE LAW

The basis for the Smiths' claim of detrimental reliance comes from a 1972 case in which the Nebraska Supreme Court held "that where a certificate of occupancy has been properly obtained in accordance with zoning statutes and ordinances, it may not be arbitrarily revoked where the certificate holder has incurred substantial expenses, commitments, and obligations in good faith reliance upon the certificate." *A.C. Nelsen Enterprises, Inc. v. Cook*, 188 Neb. 184, 188, 195 N.W.2d 759, 762 (1972). See, also, *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992); *Omaha Fish & Wildlife v. Community Refuse*, 213 Neb. 234, 329 N.W.2d 335 (1983).

Before the district court, the Smiths argued that they had properly obtained building and floodplain development permits from the county and incurred substantial expenses in good faith reliance upon the permits. The Smiths argued that they were therefore entitled to relief in accordance with the principles set forth by the Nebraska Supreme Court above. The Smiths asked that the county be enjoined from enforcing the stop order and that the Smiths be allowed to finish the construction. The district court agreed and granted summary judgment to the Smiths.

Summary judgment is proper if the pleadings and admissible evidence offered show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Adams v. Manchester Park*, 291 Neb. 978, 871 N.W.2d 215 (2015). A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *C.E. v. Prairie Fields Family Medicine*, 287 Neb. 667, 844 N.W.2d 56 (2014). If the movant meets this burden, then the

nonmovant must show the existence of a material issue of fact that prevents judgment as a matter of law. *Id.*

APPLICATION

The county argues that the district court erred in finding that there were no genuine issues of material fact with respect to the Smiths' claim for detrimental reliance. In particular, the county argues that the facts show that the Smiths' building project exceeded the allowable setback because it had a greater footprint than the original foundation, that the basement exceeds the allowable height restriction, and that the permits expired on their own terms prior to the commencement of the lawsuit. Because we conclude that the county issued permits to the Smiths and approved of the construction the Smiths began, we find there were no material issues of fact which precluded summary judgment on the Smiths' claim for detrimental reliance.

The property in question is zoned as agricultural land, meaning that any structure must be set back 50 feet from the property line. However, because the structure on the Smiths' property predated the implementation of the zoning regulations, the Smiths believed their reconstruction project had "'grandfather rights'" and did not need to comply with the 50-foot setback requirement.

The Smiths produced evidence that county officials informed them that their reconstruction project would continue to be grandfathered in as an exception to the setback requirement. In particular, the Smiths presented a series of letters with county officials. On May 26, 2011, Stephen sent a letter to Cindy Gilbert at the Sarpy County Department of Planning and Building. In the letter, Stephen noted that his application for a building permit had been denied but that he believed the denial was in error. Stephen agreed that his property was zoned agricultural but argued that "the property in question has been residential and in violation of that [setback] requirement prior to the implementation of zoning requirements in Sarpy County in 1959. As a result of this, the residential setback requirement of twelve feet (12′) would apply."

On June 20, 2011, the Smiths received a letter from Bovick, the Deputy County Administrator. Bovick referenced a conversation he had with Smith and stated that because the reconstruction project could be completed for less than 50 percent of the structure's market value, "it appears your structure has not lost its legal non-conforming ('grandfathered') status so there is no need for you to apply for a variance to the Board of Adjustment for the setbacks at this time." Bovick also wrote that the Smiths would be permitted to add a second story onto the structure "as long as you do not encroach on the setbacks any further."

The Smiths also introduced the affidavit of Stephen. Stephen stated that he had spoken with Rebecca Horner, the prior Sarpy County Zoning and Planning Director, about his building project and that Horner had informed him that his plan to locate columns 14 feet from the north property line was acceptable. According to Stephen's affidavit, Horner "agreed that the 12 foot setback for residential property appears to be the reasonable standard to be applied on the subject property." Stephen's affidavit also indicated that two county officials, Reese and Baker, had inspected the building's foundation in summer 2013 and approved of the location of columns that exceeded the prior structure's footprint.

The Smiths also introduced copies of the building plans which they claimed were submitted along with their application for the building permit. The plans show a lower level garage, a first and second story, and support columns for the second story addition.

The county presented two affidavits of Lynam and accompanying exhibits. Lynam stated that she had inspected the Smiths' property in late August 2012 and observed that the completed foundation walls had "a building footprint that was larger than the building footprint prior to the June 2009 fire." Lynam stated that "[a] larger building footprint means that the building has increased its perimeter." Lynam told the Smiths that she thought the building permit was incomplete and that the project did not comply with Sarpy County regulations. Lynam issued an order to stop construction on October 15, 2013.

The Smiths also presented evidence regarding the expiration date of the permits. Specifically, Stephen's affidavit stated that he had a conversation regarding the expiration date with Reese, the Sarpy County Building Inspector, in early summer 2013 as follows:

> George Reese and I also discussed the expiration date of the permit, which he brought up, and he stated that when a home owner is contracting the work themselves that the Sarpy County Zoning and Building Department does nbot [sic] enforce the time limit because the County expects the project to take longer than one year.

Stephen's affidavit went on to recount a prior experience he had with respect to the permit expiration date:

> Indeed, when I remodeled the house . . . next door to the subject property, Ken Tex, Former Planning and Building Director, stated that the County does not enforce the one year time limit on the permit when homeowners contract the work themselves . . . .

On appeal, the county argues that there is an unresolved factual question regarding whether the Smiths were required to build over the footprint of the preexisting structure or whether they were permitted to expand the structure outward as long as they complied with the residential setback requirement. However, we conclude that the county waived any such argument when it inspected the building plans and foundation and failed to issue a stop order for over a year. A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct. *State ex rel. Wagner v. Amwest Surety Ins. Co.*, 280 Neb. 729, 790 N.W.2d 866 (2010). To establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part. *Id.* Here, the county's extended delay in halting the construction despite receiving the building plans and inspecting the foundation amounts to a waiver of any such claim.

Construing the evidence in the light most favorable to the county, it is apparent that the county represented to the Smiths that the reconstruction project was acceptable based on the approved permit and submitted plans and that the Smiths relied upon such representations in commencing the project. Importantly, the building plans which the Smiths submitted with their building permit application showed the new footprint of the building, including the columns which exceeded the prior foundation's footprint and the layout of the basement level of the structure.

According to Lynam's affidavit, county procedure was to review and approve of building plans before granting a building permit. Although Lynam could not locate the plans after she took office, the county presented no evidence to contradict the Smiths' assertions that they had provided the plans to county officials for their review. Furthermore, the June 2011 letter from Bovick confirmed that the county had received plans from the Smiths in April 2011.

Additionally, although Lynam verbally expressed her concerns that the project did not comply with county regulations to the Smiths in August 2012, she did not issue the stop order until October 2013. During that 14-month period, other county officials continued to approve of the building project, specifically when Reese and Baker inspected the foundation in the summer of 2013. The county argues that the fact Lynam expressed her concerns starting in August 2012 means the Smiths could not have acted in good faith in relying upon the building permit. However, the Smiths relied not just upon the building permit, but also upon the approved building plans and the representations of other county officials *after* Lynam expressed her concerns. For more than a year after issuance of the building permit, there was no official order or document from the county requiring the Smiths to halt their construction and, in fact, county officials had given their approval for the project's foundation. Accordingly, we conclude the evidence demonstrates that there is no genuine issue of material fact with respect to the Smiths' claim that they detrimentally and in good faith relied upon the county's representations in undertaking the construction project.

With respect to the county's arguments that the building permits expired on their own terms prior to the lawsuit, we acknowledge that the Sarpy County Zoning Regulations provide for a 1-year expiration period for building permits However, the Smiths presented evidence that county officials represented to them that the 1-year expiration limit on the permit did not apply to them. The county presented no evidence to contradict the representations made to the Smiths by these officials. Accordingly, we conclude the district court correctly determined that there were no genuine issues of material fact and that summary judgment in the Smiths' favor is appropriate.

## CONCLUSION

We conclude that the undisputed facts show that the Smiths detrimentally relied on the county's representations in undertaking their building project. Accordingly, we find no error in the district court's grant of summary judgment in the Smiths' favor, and we affirm.

AFFIRMED.